Filed 10/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD A. DENTON,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>     Defendants and Respondents. | A147384<br><br>(San Francisco County<br>Super. Ct. No. CGC-13-534508) |

Plaintiff Richard Denton filed a lawsuit against defendants City and County of San Francisco, his employer, and John Doyle, his supervisor (when referred to collectively, defendants). Defendants filed a motion for summary judgment, and in the weeks leading up to the hearing on the motion the parties engaged in settlement discussions. That led to a settlement—for $250,000—and Denton's then-counsel filed a notice of conditional settlement. A week later, after Denton had discharged his attorney, defendants' counsel successfully applied ex parte to have the settlement set aside—this, despite Denton twice assuring defendants' counsel that he was not backing out of the settlement. Four days later, defendants' summary judgment motion came on for hearing. Denton, appearing in propria persona, and insisting the parties had agreed to a settlement, requested a continuance so he could oppose the motion. The trial court denied the request and granted defendants' motion on the ground it was unopposed. Denton then filed a motion for new trial, which the trial court denied.

We reverse, concluding the trial court abused its discretion in denying Denton's request to continue the hearing on the summary judgment motion and in denying his motion for new trial.

1

# BACKGROUND

In 2003, Denton began his employment with the City and County of San Francisco (City). He began in the Department of Emergency Management, and in 2009 moved to the San Francisco Public Utilities Commission. In September 2013, while still employed with the City, Denton filed a complaint against defendants.[1] The complaint was filed in propria persona.[2]

In February 2014, attorney Clarice Letizia substituted in on behalf of Denton.

In March 2014, the case was set for jury trial in March 2015.

In November 2014, Letizia filed a first amended complaint, the operative pleading here, alleging eight causes of action: workplace retaliation (Lab. Code, § 1102.5); disability discrimination (disparate treatment); disability discrimination (failure to accommodate); disability discrimination (failure to engage in the interactive process); defamation; violation of the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.); hostile work environment harassment; and failure to prevent harassment, discrimination, or retaliation. The only causes of action alleged against Doyle were defamation and hostile work environment harassment.

Denton served various discovery, responses to which he claimed were inadequate, necessitating several motions. In February 2015, the trial date was continued to September 21, 2015, and then again, by stipulation, to October 26.

Meanwhile, on December 1, 2014, defendants filed a motion for summary judgment or, in the alternative, summary adjudication, set for hearing on February 19, 2015. The motion was accompanied by a 39-page supporting memorandum, a 13-page statement of claimed undisputed material facts, a request for judicial notice of six exhibits, and seven declarations.

Because discovery issues remained, hearing on the motion was continued several times, the last time to be heard on September 25. The effect of this was that Denton's

---

[1] The complaint also named Permanente Medical Group, Inc., which was dismissed, apparently based on a good faith settlement.

[2] Denton is an attorney by education.

opposition to the motion for summary judgment would be due September 11. Whether attorney Letizia was working on such opposition is not apparent from the record. What is apparent is that the parties agreed to attempt to settle. And did. Specifically:

On Friday, September 4, a mediation was held with Michael Young of Judicate West. No settlement was reached by the end of the day, but the parties agreed to continue negotiating by telephone with the mediator the next week. As defendants' own brief describes it: "The parties continued to negotiate throughout the week but had not reached a resolution by Thursday, September 10, 2014—the day before Denton's opposition to Defendants' motion for summary judgment was due. Defendants agreed to extend the time for Denton to file his opposition to Monday, September 14, 2015, to allow for additional time to reach settlement."

Defendants' attorney Lisa Berkowitz sent an e-mail confirming this, "in the hope that the parties could reach a resolution before that time." Or, as Denton's attorney Letizia confirmed in her e-mail on the morning of September 10: "This will confirm that you will not object to my filing the Opposition to Your Motion for Summary Judgment on Monday, 9-14-15, instead of tomorrow 9-11-15, so that we can continue our efforts to settle the case today."

Those efforts proved fruitful, and on September 11, mediator Young informed defendants' attorney Berkowitz that agreement had been reached. And on September 14, Denton's attorney Letizia filed a notice of conditional settlement. Again, we quote defendants' description of the state of affairs as of this time: the "Board of Supervisors and Public Utilities Commission had not yet approved the settlement, nor had the parties reduced the terms of settlement to writing. Defendants, however, believed that there was agreement as to all material terms."

Very early on the morning of September 16, Denton discharged attorney Letizia. As Denton described it, "I discharged my attorney, Clarice Letizia, for refusing to withdraw the 998 offers that were still pending in addition to the conditional settlement, provided her with a signed and dated substitution of attorney form, and instructed her not

3

to perform any further work on my case, and to have no further contact with any of the parties associated with the case."

Later that day, Denton signed a notice of substitution of attorneys for Letizia to sign and file with the trial court, substituting himself in place of Letizia. As will be seen, Letizia did not file the substitution until September 21.

At 7:49 a.m. on September 16, less than hour after discharging Letizia, Denton sent an e-mail to defendants' attorney Berkowitz. It read in its entirety as follows:

"This email is to inform you that Clarice Letizia no longer represents me in any legal matters effective 6:51 am this morning, and has been instructed not to have any further contact with you or your clients. If Ms. Letizia has contacted you or your clients since 6:51 a.m., or makes any future contacts, please let me know.

"Additionally, Ms. Letizia informs me she made two 998 settlement offers, one to CCSF and one to Mr. Doyle. So that no confusion about their status remains I'm taking this opportunity to state that any and all CCP 998 settlements [*sic*] offers to date are withdrawn if not already withdrawn.

"It is my understanding Ms. Letizia has sent at least one other settlement offer and I only just learned she has filed a conditional Notice of Settlement form CM-200. I will contact you later about these developments."

At 11:12 a.m. the next day, September 17, Denton sent another e-mail to Berkowitz. It read as follows: "Dear Ms. Berkowitz, [¶] Because of recent communications I received from Ms. Letizia, it would appear there will be a delay in filing and serving the form CM-050 notification of attorney substitution. So I just wanted to take this opportunity to reaffirm that I have terminated Ms. Letizia's representation as of 6:51 a.m. on 09/16/05; that I am the Plaintiff in pro per for my case; and that any communications from Ms. Letizia you have received, or may receive involving my case are to be ignored. If there have been any communications from her on my matter, please let me know."

Eighteen minutes later, Berkowitz e-mailed back:

4

"We (meaning the City defendants and you) had a settlement agreement. My understanding from the mediator is that you agreed to that settlement. You are taking now [*sic*] backing out of the agreement for reasons that you have not shared with me. Is this correct?

"If so, you or your lawyer need to immediately rescind the Notice of Settlement with the Court. Please be advised that I will be requesting from the Court that my summary judgment be heard as scheduled next week, and the trial date proceed as scheduled. You and Ms. Letizia will be cc-d on any such correspondence/filings.

"I am cc-ing Ms. Letizia until I get a substitution form from you."

Denton responded within an hour: "Ms. Letizia has not as yet been provided me [*sic*] with a copy of the offer to settle you refer to. It would expedite matters if you could provide me with a copy (email would be fine)."

Berkowitz replied immediately, the text of her e-mail reading as follows: "The proposed settlement amount is the agreed upon amount reached with the mediator's help via telephone to both lawyers in the days following the mediation. It is not in writing, except as confirmed by the mediator by email to the lawyers on 9/11/15. It is $250,000, inclusive of attorneys fees, total, subject to approval by the SF Board of Supervisors and the PUC Commission in exchange for a full release of all claims, as set forth in the City's standard settlement agreement. I was in the process of finalizing the settlement and release to send to your attorney for her review when I got your email this week. It is my understanding that you approved and agreed to this settlement."

At 10:34 a.m. on Friday, September 18, Berkowitz e-mailed notice to Letizia and Denton that defendants would appear ex parte on the following Monday, a notice entitled "Application for an Order Vacating Notice of Settlement Filed by Plaintiff." The ex parte notice made no mention of any other relief that would be sought.

In response to Berkowitz's reference to Denton's purported "rejection" of the settlement agreement, Denton twice corrected Berkowitz in writing. The first was mid-Friday, September 18, a few hours after Berkowitz sent the ex parte notice, when Denton replied: "I have communicated nothing to you in regards to an acceptance or

5

rejection of the proposed settlement that is the subject of the Notice of Settlement.  In my email to you on 9/18/15 7:49 a.m. I reaffirmed/restated my withdrawal of *any CCP 998 offers and those offers only* which is entirely unrelated to the Notice of Settlement.

The second was on Sunday, September 20, when he again told Berkowitz via e-mail that "I have not rejected the settlement agreement."

Defendants' ex parte notice was accompanied by a declaration from attorney Berkowitz, which declaration testified in pertinent part as follows:

"2.  . . . [O]n September 11, 2015, a settlement was reached.  It was my understanding that Plaintiff was in agreement to this settlement.  Indeed, the mediator confirmed that all parties were in agreement to the settlement before confirming the settlement in an email to the [*sic*] both Plaintiff's counsel and myself.

"3.  Plaintiff's attorney, Clarice Letizia, apparently immediately filed a Notice of (Conditional) Settlement of Entire Case with the Court on September 11, 2015—before the settlement and release had been drafted or signed by the parties.  (See Exh. A attached.)

"4.  On September 16, 2015, I received an email from Plaintiff in which he informed me that he had fired his lawyer, that she no longer represents him, and that all settlement offers are withdrawn.  (See a true and correct copy of that email, attached as Exh. B.)[3]

"5.  I immediately contacted both the mediator and Ms. Letizia and learned that indeed, Plaintiff was no longer agreeable to settling this case.

"6.  I then requested in a telephone call to Ms. Letizia and an email to both Ms. Letizia and Plaintiff that they rescind the Notice of Settlement.  (See a true and correct copy of that email attached as Exh. C.)  As of September 18, 2015, Plaintiff has not rescinded the Notice of Settlement.

---

[3] Exhibit B was Denton's September 16 e-mail quoted above.  That e-mail does not say "all settlement offers are withdrawn." To the contrary, it states that the 998 offers are "withdrawn," and then refers to "one other settlement offer," about which he "will contact" Berkowitz.

"7.  Plaintiff emailed me on September 17, 2015, informing me that there would be a delay in filing the substitution of attorney form and reiterating that he is pursuing this case in pro per.  (A true and correct copy of that email is attached as Exh. C.)"

So, according to attorney Berkowitz, Letizia informed her on September 16, after Letizia had been discharged and instructed by Denton not to communicate with other parties—that Denton was no longer agreeable to the settlement.  As shown above, Denton told Berkowitz he was.  Whatever, that was the state of attorney Berkowitz's knowledge as she proceeded to the ex parte hearing on Monday morning.

Denton, who did not know what was in the notice of the ex parte hearing, met with Berkowitz before the hearing.  As Denton describes it, "[s]he accused him of being deliberately ambiguous and refused his offer to do whatever he could to demonstrate his commitment to the settlement."

At the time set for hearing, the clerk recorded Denton's and Berkowitz's appearances and, as is typical, took the ex parte papers to the judge's chambers.  This was the first time Denton received a copy of the papers.[4]  Contrary to what had been in the notice e-mailed to him, the application not only asked the court to vacate the notice of conditional settlement, but to maintain the previously scheduled date of September 25 for the hearing on the City's summary judgment motion.

The court granted the application without taking the bench, its order stating that it was doing so "specifically because Plaintiff Richard A. Denton has not agreed to a settlement."  The order vacated the notice of conditional settlement and stated that the September 25 hearing date for the summary judgment motion and the October 26 trial date "remain on calendar."

After the court vacated the notice of settlement, Denton attempted to negotiate a new agreement with the City, and on September 24, the day before the summary

---

[4] Although Letizia had apparently been served with a copy of the ex parte application on September 18, she did not forward a copy of the application to Denton, nor did she file any opposition to the application on Denton's behalf.  Rather, on September 21, just hours before the ex parte hearing, she filed the substitution of attorney.

7

judgment hearing, filed a new notice of conditional settlement.  The register of actions shows the court treated this notice as void under the order of September 21.

The next development was the hearing on September 25, the scheduled date for the summary judgment motion.  Denton appeared in propria persona, without any opposition having been filed.  The hearing was brief indeed, resulting in a transcript of some four pages, a hearing that began as follows:

"THE CLERK:   Calling line No. 4, 534508, Richard Denton vs. the City and County of San Francisco.

"MS. BERKOWITZ:   Good morning, your Honor.  Lisa Berkowitz for the City and County and individual defendant John Doyle.

"MR. DENTON:   Richard Denton, Plaintiff pro per.

"THE COURT:   Mr. Denton, I got a notice of contest from you, so—

"MR. DENTON:   Last Monday.

"THE COURT:   Just a second.  All right.  The matter was granted.  There was no opposition filed.

"Now, what can I do for you?"

And it was downhill for Denton from there.  Denton requested a continuance:  "I would like to contest that motion from last Monday [the ex parte ruling] and ask to have the motion for summary judgment re-noticed."  The court denied it, and confirmed it was granting the summary judgment motion:  "Mr. Denton, there's absolutely no basis on which I can change my ruling.  I'm not going to continue anything.  You had your opportunity.  You didn't take it."

Denton persisted, arguing that he had too little time to prepare and was actively seeking new counsel.  He pointed out that defendants' counsel had conceded in the ex parte application that a settlement had been reached.  The hearing ended with Denton's last pitch—and the court's terse reaction.  This was it:

"MR. DENTON:   Your Honor, my attorney put in the substitution, finalized the substitution at 5:30 a.m. on Monday of the ex parte motion, so I had from that time until when we walked in the door to prepare.

8

"I did come in. I'm unfamiliar with the procedures. I had no desire or intention to continue as pro per. I'm actively seeking and will shortly secure a new attorney. We had a settlement agreement that in her filing she acknowledges that we had a settlement agreement. As soon as opposing counsel saw that I let my attorney go, she filed a motion to take advantage of the fact that I was without representation.

"Mediation continues. We're very close. We have a settlement. We have exactly the same terms that have been agreed on for the last two weeks. Opposing counsel simply denies them, and I—it is my intent to settle this case, and I would at least like some additional time to pursue that.

"THE COURT: There's no case to settle, sir. I'm going to sign a judgment."

That same day, the court signed and filed the order granting the motion for summary judgment. The order reads in its entirety as follows: "This matter came on for hearing on September 24, 2015 . . . . Deputy City Attorney Lisa B. Berkowitz appeared on behalf of defendants, the City and County of San Francisco ('City') and John Doyle. Plaintiff Richard A. Denton appeared in pro per. There being no opposition filed, THE COURT HEREBY GRANTS Defendant's Motion for Summary Judgment. [¶] **IT IS SO ORDERED.**"

Judgment was entered on October 22.

On November 18, still representing himself, Denton filed a motion for new trial. It argued four grounds: (1) "irregularity in the proceedings," because both Berkowitz and Letizia had engaged in attorney misconduct that resulted in the trial court granting the ex parte application and deprived him of a fair opportunity to oppose the summary judgment motion[5]; (2) unfair surprise, in light of the notice provided and because the ex parte

---

[5] Denton contended that Berkowitz breached her duty of candor to the court by submitting an ex parte application that stated Denton was withdrawing from the settlement, notwithstanding his two written notifications since the ex parte notice that he was not. As to Letizia, Denton contended she had engaged in attorney misconduct by refusing to withdraw promptly after her discharge, miscommunicating Denton's position on the settlement, and then withdrawing just hours before the ex parte application was

9

notice did not state defendants would seek to have the summary judgment motion heard on that date; (3) insufficiency of the evidence; and (4) error of law, the trial court having granted the summary judgment motion on the sole basis Denton had not filed opposition.

Defendants' primary argument in opposition to the new trial focused on Denton's failure to file opposition to the summary judgment motion, arguing that he failed to file written opposition, a declaration, or a request for a continuance "even though it was undisputed that the parties did not have a settlement agreement at the time his opposition was due." Defendants also contended that Berkowitz did not engage in misconduct because there was "no evidence" she was not "acting truthfully in litigating this case" at all times; that Denton's communications with Berkowitz regarding the settlement were ambiguous; and that he attempted to negotiate a new settlement on September 22. Defendants also faulted Denton for trying to negotiate a settlement instead of submitting a declaration seeking a continuance. And they contended Denton did not suffer surprise because he failed to demonstrate diligence in opposing the summary judgment motion, and that the trial court had discretion to grant summary judgment because Denton failed to file opposition.

Denton filed a reply, and the new trial motion came on for hearing on December 28. This hearing, too, was brief, all of eight pages. It began with Denton asking to confirm his understanding of the tentative ruling, that "It was because I did not show how I could have successfully opposed the motion." The court responded, "You didn't oppose it." Despite Denton's best efforts, the court indicated, time and again, the lack of opposition to the summary judgment motion. In the court's words, "You know, it all goes back to the granting of the unopposed motion." After several more minutes of argument from both Denton and Berkowitz, the trial court returned to its point: "Sir, I don't know what you've got there, but let's go back to the salient factor here. The motion that was granted was unopposed."

_____

heard, without opposing it or even providing Denton a copy of the application, thus breaching her duty under Rules of Professional Conduct, rule 3-700(A)(2).

10

The court dismissed Denton's complaint of Letizia's misconduct, saying at one point, "You may have some complaint against your former attorney, but that has nothing to do with what's in front of me"; and at another, "I told you what your remedy is there. It's between you and Ms. Letizia." And, apparently agreeing with defendants' counsel Berkowitz that no settlement had been reached, the court stated, "She [Berkowitz] declares that there was a withdrawal of the 998. You're withdrawing it. Settlement was rejected. I don't know what else to say." The new trial motion was denied.

Denton appealed from that denial, and from the summary judgment.

## DISCUSSION

Denton, now represented by counsel, has filed a comprehensive brief, well written and well researched,[6] asserting three claims of error: (1) granting ex parte relief in the absence of any showing why immediate relief was necessary; (2) denying Denton's request for a continuance of the summary judgment hearing and granting the summary judgment motion on the ground that Denton had failed to file an opposition; and (3) denying the motion for new trial.

We conclude the second and third arguments have merit, and thus reverse, without the need to discuss the first argument.

### The Trial Court Abused Its Discretion in Refusing to Continue the Summary Judgment Hearing and Denying the Motion for New Trial

As discussed, following the court's ruling against him on the ex parte motion, Denton appeared on the date scheduled for the summary judgment hearing and requested a continuance. The trial court denied it, emphasizing that Denton had not filed any opposition to the motion, along the way casting aspersions at Denton for the several continuances of the hearing. This comment is illustrative: "I'm not going to continue

---

[6] Defendants have also filed a comprehensive brief, responding to each of Denton's arguments. Indeed, defendants then go on for 23 additional pages in support of their position that they set forth a prima facie showing supporting their summary judgment on a cause-of-action by cause-of-action basis. Curiously, defendants' argument does not address the claims in order but rather in this order: sixth, fifth, seventh, fourth, third, second, first, and eighth.

11

anything.  You had your opportunity.  You didn't take it.  You litigated this case up and down.  You're certainly aware of the procedural issues and rules involved.  This is the end of it.  [¶] . . . [¶]  There was one extension after another in this, in the history of this case.  There was a motion.  You didn't oppose it. . . .  I didn't get a piece of paper from you.  It's over."  This was error.

When, as here, a request for a continuance of a summary judgment motion is made on grounds other than the mandatory basis of Code of Civil Procedure, section 437c, subdivision (h), the court must determine whether the party requesting the continuance has established good cause.  (*Hamilton v. Orange County Sheriff's Dept.* (2017) 8 Cal.App.5th 759, 765; *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 717 (*Lerma*).)  And whether good cause has been shown is reviewed for abuse of discretion.  (*Ibid.*)

In *People v. Jacobs* (2007) 156 Cal.App.4th 728, 736 (*Jacobs*), we began our analysis with a lengthy discussion of the concept of abuse of discretion, as follows:

"Various definitions and principles describing the abuse of discretion standard of review have been stated and repeated in numerous cases, such as in *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331, that we will set aside a trial court ruling only upon a showing of ' " 'a clear case of abuse' " ' and ' " 'a miscarriage of justice.' " '  As to what is required to show such abuse, it has been said that a trial court abuses its discretion only when its ruling ' " 'fall[s] "outside the bounds of reason." ' " '  [Citation.]'  (*People v. Benavides* (2005) 35 Cal.4th 69, 88); accord, *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [abuse of discretion requires a showing that the trial court ' "exceed[ed] the bounds of reason, all of the circumstances before it being considered" '].)  More colorfully, it has been said that discretion is abused only when the trial court's ruling is arbitrary, whimsical, or capricious.  (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614; *People v. Branch* (2001) 91 Cal.App.4th 274, 282; see *People v. Giminez* (1975) 14 Cal.3d 68, 72 [' "capricious disposition or whimsical thinking" '].)"

We went on to describe other possible descriptions, but noting that "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles

12

that govern the subject of [the] discretionary action . . . .' " (*Jacobs, supra*, 156 Cal.App.4th at p. 737.)

And we concluded with this: "All this is well described in Witkin where, likewise citing the still vital *Bailey v. Taaffe* [(1866)] 29 Cal. 422, 424, the author distills the principle as follows: 'Limits of Legal Discretion. [¶] The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. (See 5 Am.Jur.2d, Appellate Review § 695.) . . .' (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407.)" (*Jacobs, supra*, 156 Cal.App.4th at p. 738.)

In light of what occurred in the brief hearing, and the short shrift given Denton by the trial court, it might be said that the trial court acted arbitrarily. Or capriciously. That, of course, would end the matter.

But even if those adjectives do not apply, Denton should have been granted the continuance in the circumstances he found himself, circumstances that were not his fault. (See *Lerma, supra,* 120 Cal.App.4th at p. 717.) The effect, of course, was the granting of the motion—and summary judgment—without Denton given any fair opportunity to oppose it. This cannot be. As Witkin tersely summarizes it, discretion "must be exercised with due regard to all interests involved, and the refusal of a continuance that has the practical effect of denying the applicant a fair hearing is reversible error. [Citations.]" (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 11, p. 38.)

When considering a continuance of a summary judgment hearing, " 'a review of the standards governing requests for continuance of trial dates is instructive.' " (*Lerma, supra,* 120 Cal.App.4th at p. 716.) Denton's situation here was certainly analogous to one of the statutory grounds: "A significant, unanticipated change in the status of the case as a result of which the case is not ready for trial." (Cal. Rules of Court, rule 3.1332(c)(7).) We thus agree with Denton's description: "Denton argued that because *City* refused to recognize a settlement it had previously asserted to exist, and from which he had not withdrawn, he was surprised that the summary motion was being heard on that

13

date and he needed additional time to seek new counsel to help oppose the motion if he could not settle. Denton went from coasting toward approval of the settlement by the board of supervisors to having to rev up to oppose a summary judgment motion being heard in just four days, and to do so without counsel or access to his client file. The words 'change in status' and 'not ready' in rule 3.1332(c)(7), hardly begin to describe it."

We see no basis supporting the trial court's ruling. To the extent the court implied that Denton was not diligent—"[t]here was one extension after another"—the implication is not supported by the record. Indeed, defendants' counsel acknowledged as much at the hearing, asserting that Denton had been aggressive, not dilatory, counsel complaining of "excessive discovery motions" and "numerous depositions" that were "over the discovery limits."

Defendants' arguments are unpersuasive. They first argue that "Because No Settlement Was Ever Reached, Denton Had No Reasonable Expectation" that the hearing would be vacated. In light of the facts set forth above, we wonder how defendants can even assert such a position.

Defendants also argue that the trial court did not abuse its discretion. They point essentially to the fact that Denton did not file a written request for a continuance, arguing as follows: "Here, by contrast, Denton—a law school graduate who submitted declarations in support of numerous motions that his lawyer filed throughout the case—made no effort to file a written request for a continuance at any point in the week leading up to the hearing. In such circumstances, the trial court did not abuse its discretion in denying Denton's last minute oral request for a fourth continuance of the summary judgment deadline." (Fn. omitted.)

To begin with, we are troubled by defendants' argument of technical noncompliance with the rules, particularly in light of their position that their own noncompliance with the ex parte notice rules—noncompliance they implicitly acknowledge—be overlooked.

But passing over that, the injustice created by the trial court's denial of the continuance made any technical procedural noncompliance inconsequential. *Hamilton v.*

14

*Orange County Sheriff's Dept., supra,* 8 Cal.App.5th 759 is illustrative. There, summary judgment was obtained by defendant's "ability to postpone depositions past the point of no return," even though the defendant did not intentionally try to undermine plaintiff's ability to take the depositions or oppose the motion. (*Id.* at p. 766.) The Court of Appeal reversed: "Where denial of a continuance would result in manifest injustice, as it did here, the policy disfavoring continuances must give way." (*Ibid.*)

Likewise here. Defendants obtained a judgment on a basis other than the merits and in the absence of any opposition, accomplished by making an ex parte application unsupported by evidence of irreparable harm—and which Denton had no meaningful opportunity to oppose. And it was all against the background that Denton not only never advised defendants he was backing out of the settlement, but affirmatively stated that he had "not rejected the settlement agreement." That was the setting in which the $250,000 settlement was lost.

Superimposed on all this was what the trial court did—granting summary judgment for lack of opposition—was the equivalent of a terminating sanction. Such cannot be upheld here, just as it was not in *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, where the trial court refused a continuance to allow the defendant to prepare a separate statement in opposition to the bank's summary judgment motion, and granted the motion. The Court of Appeal reversed, holding that "Sanctions which have the effect of granting judgment to the other party on purely procedural grounds are disfavored. [Citations.] Terminating sanctions have been held to be an abuse of discretion unless the party's violation of the procedural rule was willful [citations] or, if not willful, at least preceded by a history of abuse of pretrial procedures, or a showing less severe sanctions would not procedure compliance with the procedural rule." (*Id.* at pp. 97–98.)

Almost all the summary judgment-related continuance cases deal with continuances to make discovery, continuances provided for by the statute itself. Even so, the principles in those cases are relevant, especially in those cases where the party moving for a continuance had not filed the required declaration or the declaration did not

15

meet the statutory requirements.  As the leading practical treatise puts it, "Nonetheless, the court must determine whether the party requesting the continuance has established good cause for it.  That determination is within the court's discretion.  [*Lerma v. County of Orange* (2004) 120 [Cal.App.4th] 709, 716; *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 [Cal.App.4th] 632, 644 . . . .  [¶]  Usually, the court's discretion should be exercised in favor of granting a continuance:  'The interests at stake are too high to sanction the denial of a continuance without good reason.'  [*Frazee v. Seely* (2002) 95 [Cal.App.4th] 627, 634 . . . .]"  (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2017) ¶ 10:208, p. 10-89.)

In sum, the trial court abused its discretion when it denied Denton's request for continuance of the summary judgment hearing.  Likewise, when it denied his motion for new trial.

We review rulings on new trial motions for abuse of discretion.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176.)  The discussion above demonstrates such abuse in that denial, as it demonstrated surprise, one of the bases of Denton's new trial motion.

Denial of new trial was probably wrong as to Denton's claim of legal error as well, and would not withstand scrutiny under the summary judgment principles.  That is, even without opposition, a court may not grant a motion for summary judgment unless it first determines that defendants have met their initial burden of proof.  (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1085–1086.)  Here, and despite the presumption that the trial court has regularly performed its official duties (see Evid. Code, § 664), the court's comments at the hearing gave no indication that the moving papers were ever reviewed.

*Jacobs, supra,* 156 Cal.App.4th 728 involved an appeal by a defendant who was sentenced to five years four months in state prison by a different judge than the one who presided over the trial.  The sentencing judge refused to grant defendant a two-day continuance under Penal Code section 1050, so that the trial judge could impose

sentence.  Defendant appealed, and we reversed, ending our opinion with this:  "Our Supreme Court has held that 'trial court discretion is not unlimited.  "The discretion of a trial judge . . . is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.  [Citation.]" '  (*Westside Community for Independent Living, Inc. v. Obledo* [(1983)] 33 Cal.3d [348,] 355.)  We hold that the decision by [the trial court here] . . . was not 'in conformity with the spirit of the law,' and could be said to 'defeat the ends of substantial justice.'  (*Bailey v. Taaffe, supra,* 29 Cal. 422, 424.)  Such decision cannot stand . . . ."  (*Jacobs, supra,* 156 Cal.App.4th at pp. 740–741.)  Same here.

## DISPOSITION

The order denying the motion for new trial is reversed, as is the summary judgment.  The matter is remanded for further proceedings consistent with this opinion.  Denton shall recover his costs on appeal.

17

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Miller, J.

A147384; *Denton v. City & County of SF*

18