Filed 10/8/20  Chancellor v. Ozzello CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT CHANCELLOR, | B292321 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC653597) |
| v. | |
| MARK A. OZZELLO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Robert Chancellor, in pro. per.; and Christopher E. Rolin for Plaintiff and Appellant.  [Retained.]

Law Offices of David R. Greifinger, and David R. Greifinger for Defendant and Respondent Mark A. Ozzello.

Markun Zusman Freniere and Compton, and John A. Marshall for Defendant and Respondent Markun Zusman Freniere and Compton.

\* \* \* \* \* \*

A doctor sued his former lawyer (and the firm with which the lawyer was "of counsel") for malpractice, breach of fiduciary duty and fraud.  The trial court denied the doctor's motion to continue the trial, denied his motion to make a late designation of an expert witness, and after the doctor's opening statement at trial, granted a nonsuit in favor of the lawyer and firm because the doctor could not establish two elements common to all of his claims.  We conclude there was no error, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Loss of medical license*

Robert Chancellor (plaintiff) is a medical doctor licensed in Nevada.  In the early 2000s, the Nevada Board of Medical Examiners (the Board) revoked his license to practice medicine on the ground that he was doing so while under the influence of controlled substances.  The Board reinstated his license in or before 2014.

#### B. *Lawsuits against the Board*

##### 1. *Federal lawsuit*

In 2015, plaintiff hired a disbarred lawyer to draft a complaint that could be used to initiate a Nevada-based lawsuit against the Board and others for abuse of process, defamation and fraud in its handling of the administrative proceedings regarding his medical license.  At some point, plaintiff started speaking with Brittany Hamilton (Hamilton), a newly admitted California lawyer.  Around that time, Hamilton began working

2

for Mark Ozzello (Ozzello), a more experienced California attorney, who was then working "of counsel" at the law firm of Markun Zusman Freniere and Compton, LLP ("the firm"). Ozzello told plaintiff that the complaint drafted by the disbarred lawyer "needed a fair amount of work."

In late August 2015, plaintiff signed a written retainer agreement with Ozzello. Under the agreement, Ozzello promised to conduct legal research for plaintiff. The written retainer did not obligate Ozzello to represent plaintiff, although Ozzello orally promised to represent him if Ozzello was able to find a Nevada-licensed cocounsel (because Ozzello himself was not authorized to practice law in Nevada).

In early September 2015, Ozzello told plaintiff that the complaint had to be filed the next day (to avoid statute of limitations problems), that Ozzello had not found cocounsel, and that plaintiff would therefore need to file the complaint as a self-represented litigant. Because the complaint provided by the disbarred lawyer had been formatted for filing in federal court, plaintiff filed the complaint in federal court as a self-represented litigant. Ozzello subsequently prepared an amended complaint, which plaintiff also filed as a self-represented litigant.

In early 2016, the Board and other defendants moved for judgment on the pleadings. Plaintiff paid Ozzello $8,000 to draft an opposition to that motion. Ozzello took the money and drafted the opposition, but refused to give it to plaintiff and urged plaintiff to call the Board's attorney and offer to dismiss the case in exchange for a promise not to seek sanctions against plaintiff for filing a frivolous lawsuit.

Plaintiff located a Nevada-based lawyer on his own, obtained a continuance of the due date for the opposition, and filed an opposition.

The federal court granted the motion for judgment on the pleadings and dismissed plaintiff's case.

### 2. *State lawsuit*

While the motion for judgment on the pleadings was pending in plaintiff's federal lawsuit, he filed a lawsuit against the Board involving similar allegations in Nevada state court. He was represented by a Nevada attorney.

## II. Procedural Background

### A. *Complaint*

As a self-represented litigant, plaintiff in March 2017 filed a verified complaint against Ozzello and the firm alleging claims for (1) legal malpractice, (2) breach of fiduciary duty, and (3) fraud. All three claims were based on Ozzello's alleged (1) "fail[ure] to prepare and submit" plaintiff's "lawsuit complaint with a reasonable amount of skill," (2) "knowing[] and intentional[]" act of "provid[ing] false and incorrect information concerning [his] role within the lawsuit as attorney of record, and the strategy [of] prosecuting plaintiff's case [in a manner that] was designed more to protect [his] self-interest than that of" plaintiff, and (3) giving of "poor legal advice which is the proximate cause of the legal hurdles with the plaintiff's . . . case."

### B. *Denial of continuance*

Following the initial case management conference in July 2017, the trial court set trial for March 12, 2018. In November 2017, plaintiff, Ozzello and the firm submitted a written stipulation to continue the trial date to June 11, 2018. The trial

4

court did not sign the stipulation. Plaintiff learned of the court's refusal to continue the trial on January 25, 2018.

On February 8, 2018, plaintiff—now represented by counsel—filed an ex parte application to continue the March trial date for four months (ostensibly, to July 2018). Citing the still-ongoing Nevada state lawsuit, plaintiff urged that a continuance of this case was warranted (1) because "possible inconsistent judgments" might arise in the two lawsuits, (2) because the outcome of the Nevada state lawsuit might "limit[]" the remedies available in this case, including having a possible collateral estoppel effect, and (3) because plaintiff could use discovery obtained in the Nevada state lawsuit in this case.

The trial court denied plaintiff's request the very same day.

Plaintiff filed a petition for a writ of mandate with this court to review the denial of his continuance request. We stayed the trial court proceedings to review the petition, but ultimately denied the petition and dissolved the stay.

Upon dissolution of the stay, the trial court fixed a new trial date for July 9, 2018, more than four months after the previously set trial date.

C. *Motion for late designation of expert*

Discovery in this case was completed by January 25, 2018, except for plaintiff's deposition, which occurred in February 2018.

On April 27, 2018, plaintiff—once again self-represented — filed an ex parte motion to designate an expert witness to testify about "the standard of care in legal malpractice cases." Plaintiff explained that he had not designated this expert earlier because (1) he had mistakenly thought the court had signed the parties' stipulation to continue the trial, (2) he "did not realize [he] needed to designate an expert" on the standard of care "prior to

5

that time," and (3) he had difficulty retaining an expert because he was a self-represented litigant.

Following an unreported hearing on May 23, 2018 at which the trial court heard "argument," the court denied the motion.

**D.** *Trial*

On July 9, 2018, the matter proceeded to a jury trial.

The trial court allowed plaintiff, who was still proceeding as a self-represented litigant, to have a lawyer as his "cocounsel."

Plaintiff moved for a continuance on the ground that Hamilton was unavailable as a witness. The trial court denied the motion after finding that plaintiff had never subpoenaed her as a witness and had not *attempted* to do so until June 21, 2018, which was nearly three months after the trial court set the current trial date. The court found that plaintiff's efforts were "insufficient and not due diligence."

Plaintiff then gave his opening statement, which was comprised of the facts set forth above. The only additional fact the plaintiff articulated was that the Nevada state lawsuit was still ongoing.

After plaintiff finished his opening statement, both Ozzello and the firm moved in writing and orally for a nonsuit. The court entertained argument outside the jury's presence, and allowed plaintiff to consult with his cocounsel. The court granted nonsuit in favor of the firm because plaintiff had not argued for the firm's liability at all during his opening statement. The court also granted nonsuit in favor of Ozzello. The court found that, even accepting the facts set forth by plaintiff in his opening statement as true, plaintiff could not prove Ozzello's negligence as a lawyer because doing so required expert testimony and plaintiff had not designated an expert witness. The court rejected plaintiff's

6

argument that Ozzello's malpractice—including his willingness to undertake tasks beyond those set forth in the written retainer agreement—was so obvious as to be subject to the "common knowledge" of the jurors and thus susceptible to proof without an expert witness. The court found that plaintiff's remaining claims were derivative of his malpractice claim, and thus mandated the same ruling.

### E. *Entry of judgment and appeal*

Following the trial court's entry of judgment for Ozzello and the firm, plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in (1) denying his February 2018 motion for a continuance, (2) denying his April 2018 motion for late designation of an expert, and (3) granting the nonsuit.[1]

## I. Denial of February 2018 Continuance Motion

Trial courts enjoy "broad discretion" in deciding whether to continue a trial. (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) Because the date set for trial is meant to be a "firm" date (Cal. Rules of Court, rule 3.1332(a)), continuances of the

---

1 Plaintiff seems to hint at a fourth argument—namely, that the trial court was biased against him. At various points in his briefs, plaintiff states that the trial court was "hostile," "overly harsh," "abusive" "intimidate[ing]" and "condescen[ding]" to him, was "biased" against him, and had "predetermined" that he "could not win." Because plaintiff offers no legal argument in support of his accusations, he has forfeited the issue on appeal. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1029; *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685.) In any event, our review of the portions of the trial record presented to us does not bear out plaintiff's accusations.

trial date are "disfavored" (*ibid.*; *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1127, overruled on other grounds as stated in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196) and to be "'sparingly'" granted (*County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 781). This general policy is reflected in the requirement that a party seeking a continuance, at a minimum, make "an affirmative showing of good cause requiring [a] continuance." (Cal. Rules of Court, rule 3.1332(c); *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 (*Falcone*).) Once he does, the trial court may then exercise its discretion to grant or deny the continuance, bearing in mind that it "'must exercise [that] discretion with due regard to all interests involved'" (*Cotton v. StarCare Medical Group, Inc.* (2010) 183 Cal.App.4th 437, 445), and that "'the refusal of a continuance which has the practical effect of denying the applicant a fair hearing is reversible error'" (*In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169 (*Hoffmeister*)). We review the denial of a continuance solely for an abuse of that discretion. (*Falcone*, at p. 823.)

The trial court did not abuse its discretion in denying plaintiff's February 2018 motion for a continuance for two reasons.

First, plaintiff did not make an affirmative showing of good cause. The California Rules of Court list seven different circumstances that "may indicate good cause." (Cal. Rules of Court, rule 3.1332(c).)[2] At most, only one such circumstance—

_____

[2] These circumstances are (1) "[t]he unavailability" of an "essential witness," a party, or trial counsel "because of death,

8

that is, "[a] party's excused inability to obtain essential testimony, documents, or other material evidence" (*id.*, rule 3.1332(c)(6))—might support plaintiff's proffered reasons for the continuance in order to wait and see what happens during the Nevada state trial.  But that exception requires proof of "diligent efforts" (*ibid.*; *Kuhland v. Sedgwick* (1860) 17 Cal. 123, 128 ["The absence of evidence is no cause for a continuance, unless reasonable diligence has been used to procure it"]), and plaintiff had not exercised any diligence in bringing the Nevada case to a resolution or in informing the trial court of the significance of its pendency despite the fact that it had been pending throughout the duration of this litigation.  (Cf. *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1244, 1246-1247 [error to deny trial continuance when plaintiff's counsel became stricken with "serious physical illness and its debilitating effects culminating in death during the final stages of litigation"].)

Second, plaintiff has not demonstrated that the "'practical effect'" of the court's denial of the continuance motion was to "'deny[]'" him "'a fair hearing.'" (*Hoffmeister*, *supra*, 161 Cal.App.3d at p. 1169.)  At the time he filed his continuance request, plaintiff had completed discovery, was represented by

illness, or other excusable circumstances" (Cal. Rules of Court, rule 3.1332(c)(1), (c)(2), (c)(3)), (2) "[t]he substitution of trial counsel" when that substitution "is required in the interests of justice" (*id.*, rule 3.1332(c)(4)), (3) "[t]he addition of a new party" (if certain additional requirements are met) (*id.*, rule 3.1332(c)(5)), (4) "[a] party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts" (*id.*, rule 3.1332(c)(6)), and (5) "[a] significant, unanticipated change in the status of the case as a result of which the case is not ready for trial" (*id.*, rule 3.1332(c)(7)).

counsel, and his sole proffered justification for the request was the pendency of a lawsuit that had been pending all along. Although, as plaintiff noted, the Nevada state lawsuit might alter the remedies available in *this* case, plaintiff was the one who created this situation by not seeking to stay this malpractice action until the Nevada state lawsuit was completed. (*Adams v. Paul* (1995) 11 Cal.4th 583, 593 (*Adams*) [noting availability of this remedy when a plaintiff files a malpractice action to meet the statute of limitations for such actions].) What is more, the factors that a trial court is to weigh in considering how to exercise its discretion whether to grant a continuance cut both ways:[3] Some (such as the absence of any prior continuances and the filing of the request a month before trial) favored granting a continuance, while others (such as the proposed four-month duration of the continuance, the absence of a stipulation, and plaintiff's failure to seek a stay of the entire litigation) favored

---

[3] These "factors" include, in pertinent part, (1) "[t]he proximity of the trial date," (2) "[w]hether there was any previous continuance," (3) "[t]he length of the continuance requested," (4) "[t]he availability of alternate means to address the problem that gave rise to the motion or application for a continuance," (5) "[t]he prejudice that parties or witnesses will suffer as a result of the continuance," (6) "[i]f the case is entitled to a preferential trial setting, the reasons for that status and whether the need for a continuance outweighs the need to avoid delay," (7) "[t]he court's calendar and the impact of granting a continuance on other pending trials," (8) "[w]hether trial counsel is engaged in another trial," (9) "[w]hether all parties have stipulated to a continuance," (10) "[w]hether the interests of justice are best served by a continuance . . . ," and (11) "[a]ny other fact or circumstance relevant to the fair determination of the motion or application." (Cal. Rules of Court, rule 3.1332(d).)

denying one. We are not at liberty to reweigh these factors in order to come to a different outcome. (*County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13, 35.)

Plaintiff resists this conclusion with five arguments.

First, he argues that parties are *entitled* to one, "garden-variety" trial continuance in each case. As explained above, that is not the law. Plaintiff cites *Pham v. Nguyen* (1997) 54 Cal.App.4th 11, but that case merely acknowledged that Code of Civil Procedure section 595.2 sets forth a policy favoring the grant of a one-month continuance when all parties agree.[4] (*Id.* at pp. 14, 17.) *Pham* is of no relevance here, where plaintiff alone was seeking a four-month continuance.

Second, plaintiff contends that there was "no prevailing reason *not* to" grant his continuance motion. This contention shifts the burden to the party *opposing* the continuance. The law, as noted above, is to the contrary.

Third, plaintiff indicates that he did not learn about the trial court's denial of the parties' stipulation to a continuance until weeks after that rejection, in part because the trial court did not create a docket entry for that denial, and that this delay created "confusion." At best, these facts explain why plaintiff made his continuance request one month before the trial date then set (rather than earlier); they do not bear on why a continuance was needed.

Fourth, plaintiff asserts that Hamilton was not available to testify at trial. We reject this assertion. Plaintiff is trying to retroactively import the basis for his *July 2018* continuance request as a basis for the *February 2018* continuance request he

_____

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

11

challenges on appeal.  This is not allowed.  (See *People v. Doolin* (2009) 45 Cal.4th 390, 450 [in reviewing the denial of a continuance, "[a] reviewing court considers . . . *the reasons presented*"], italics added.)  Even if it were, plaintiff's lack of diligence in securing Hamilton as a witness supports the denial of a continuance.  (E.g., *Jensen v. Superior Court* (2008) 160 Cal.App.4th 266, 270-272.)

Lastly, plaintiff posits that three further cases dictate reversal—namely, *Hamilton v. Orange County Sheriff's Dept.* (2017) 8 Cal.App.5th 759 (*Hamilton*), *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779 (*Denton*), and *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389 (*Oliveros*).  They do not.  *Hamilton* and *Denton* both dealt with continuances of a summary judgment motion pursuant to section 437c, subdivision (h), and not trial continuances.  More to the point, *Hamilton* and *Denton* both involved a trial court's inequitable grant of a continuance to one party but denial of a continuance to the appellant (*Hamilton*, at pp. 765-767; *Denton*, at p. 793); that did not happen here.  *Oliveros* dealt with a trial court's categorical refusal to grant a continuance when a party's counsel developed a last-minute conflict of interest (*Oliveros*, at pp. 1395-1396); that also did not happen here.

## II.     Denial of April 2018 Motion for Late Designation of Expert Witness

The Civil Discovery Act (§ 2016 et seq) regulates the disclosure of information regarding "expert trial witnesses." (§ 2034.210.)  Once a trial date is set, a party has the statutory right to "demand a mutual and simultaneous exchange" of the names of all persons "whose oral or deposition testimony in the form of an expert opinion any party expects to offer in evidence at the trial."  (*Ibid.*; §§ 2034.230 [requiring that demand be in

12

writing], 2034.260 [contents of exchange]; accord, *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 538 [so noting].) If at the time of trial an expert is *not* disclosed, the trial court "shall exclude" the expert's testimony from evidence if (1) the failure to disclose is "unreasonabl[e]," (2) a party objects, and (3) the objecting party has itself complied with the rules governing disclosure of expert witnesses." (§ 2034.300; *Tesoro del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 641; *Richaud v. Jennings* (1993) 16 Cal.App.4th 81, 92.) "The purpose of the[se] expert witness discovery statutes is 'to give fair notice of what an expert will say at trial,' [citation]," which is critical because a party needs more time to prepare to meet an expert witness's specialized knowledge. (*Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 416 (*Cottini*).)

Where, as here, a party has not complied with its obligation to timely disclose an expert witness, he may ask the trial court for leave to make a late designation of an expert witness. (§ 2034.710.) A court may not grant such a request unless it finds that the moving party (1) "[f]ailed to submit the information as the result of mistake, inadvertence, surprise, or excusable neglect," (2) "[s]ought leave to submit the information promptly after learning of the mistake, inadvertence, surprise, or excusable neglect," and (3) "[p]romptly thereafter served a copy of the proposed expert witness information described in Section 2034.260 on all other parties who have appeared in the action." (§ 2034.720, subd. (c).) We review a trial court's denial of a motion for late designation of an expert witness for an abuse of discretion. (*Cottini*, *supra*, 226 Cal.App.4th at p. 418; *Dickison v. Howen* (1990) 220 Cal.App.3d 1471, 1476.)

13

The trial court did not abuse its discretion in denying plaintiff's motion for late designation of an expert witness on the standard of care because plaintiff did not satisfy the statutory prerequisites for such relief. As noted above, plaintiff offered three reasons in support of his motion—that he mistakenly thought the trial court had signed the parties' stipulation to continue the trial, that he "did not" previously "realize" he needed an expert on this topic, and that he had difficulty obtaining an expert witness due to his status as a self-represented litigant. But *none* of these reasons explains why he waited until late April 2018 to bring his motion. Plaintiff learned the stipulation to continue was denied in late January 2018, and he offered no evidence as to when he realized he needed an expert witness or when he realized that his efforts to locate an expert witness were unavailing. We cannot grant plaintiff any "greater[] consideration than other litigants and attorneys" merely because he is self-represented. (*Nelson v. Guant* (1981) 125 Cal.App.3d 623, 638-639.) Because plaintiff failed to satisfy the necessary prerequisites of seeking leave to submit the information promptly, the trial court acted well within its discretion in denying his request.

Plaintiff offers two further arguments. First, he argues that the trial court had "no plausible reason" *not* to grant his request. This argument impermissibly shifts the burden to the trial court or to the non-moving party when that burden belongs with the moving party. Second, plaintiff argues that Ozzello and the firm would not have been prejudiced by the late designation of his expert. The absence of prejudice from granting the relief plaintiff seeks, however, does not make up for his failure to satisfy the threshold requirements for that relief.

14

## III. Grant of Nonsuit

In a jury trial, a trial court may grant a nonsuit for the defendant(s) after a plaintiff's opening statement if the court, after accepting all of the stated facts as true and drawing all reasonable inferences from those facts, concludes that "as a matter of law there will be no evidence of sufficient substantiality to support a judgment" for the plaintiff. (§ 581c; *Russell v. Soldinger* (1976) 59 Cal.App.3d 633, 640; *Rokos v. Peck* (1986) 182 Cal.App.3d 604, 611; *Jensen v. Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 965 (*Jensen*).) Nonsuit is a generally "disfavored" remedy, but must be granted if its requirements are met. (*Jensen*, at p. 965.) We independently review a trial court's grant of a nonsuit. (*Wheeler v. Raybestos-Manhattan* (1992) 8 Cal.App.4th 1152, 1154.)

As pled, all of plaintiff's three claims turn on the viability of his malpractice claim. To support a judgment for legal malpractice, the plaintiff must establish that (1) the attorney breached his "duty . . . to use such skill, prudence and diligence as members of the profession commonly possess," (2) "a proximate causal connection between the breach and the resulting injury," and (3) "actual loss or damage." (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536; *Lucas v. Hamm* (1961) 56 Cal.2d 583, 591-592; *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180-181 (*Neel*).)

As a general matter, the standard of conduct defined by the "skill, prudence and diligence" that attorneys "commonly possess"—and whether an attorney's conduct in any particular case has fallen below that standard—are "matter[s] peculiarly within the knowledge of experts." (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239

(*Unigard*); *Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502, 1508 (*Goebel*); *Jeffer v. Glickman* (1991) 234 Cal.App.3d 1432, 1441.)  In such cases, a malpractice plaintiff's failure to call an expert witness on these issues is fatal to his case.  (*Unigard*, at p. 1239.)  But if "the failure of attorney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony"—chiefly, because the attorney's malfeasance is "so clear" or obvious as to be within the "common knowledge" of jurors—then the malpractice plaintiff's failure to call an expert witness is not fatal to his case.  (*Wilkinson v. Rives* (1981) 116 Cal.App.3d 641, 647-648; *Wright v. Williams* (1975) 47 Cal.App.3d 802, 810; *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1093 (*Stanley*).)  An expert witness is not needed when the malpractice consists of advising a client to take actions that violate the criminal law (*Goebel*, at p. 1509), failing to do any legal research whatsoever (*id.* at p. 1508; *Stanley*, at pp. 1093-1094), or taking actions that constitute a "blatant and egregious" violation of the ethical rules against taking a financial interest adverse to a client (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1146-1148).

In this case, the trial court did not err in granting a nonsuit—against either Ozzello or the firm—because the facts plaintiff stated as the basis for his legal malpractice claim required the testimony of an expert witness and plaintiff was not going to call any such expert witness.[5]  In his opening statement

---

[5]     There is a second reason the trial court's grant of a nonsuit was proper—namely, that the viability of malpractice action based on negligence in representing a client in an underlying lawsuit turns on whether the plaintiff was injured by the

16

and in the additional facts he recounted to the trial court during the argument on the nonsuit motion, plaintiff identified four alleged deficiencies in Ozzello's representation; none was within the "common knowledge" of jurors. Plaintiff argued that Ozzello was negligent for telling him to file the initial complaint the day before it was due, but whether Ozzello properly calculated the due date, whether his advice on where to file the lawsuit (federal versus state court) was correct, and whether the complaint was of good quality are all matters within the special knowledge of lawyers. This is not a case, like *Goebel* and *Stanley*, where the lawyer failed to conduct any legal research whatsoever. Plaintiff argued that Ozzello did not hand over the opposition to the motion for judgment on the pleadings despite plaintiff paying for it, but plaintiff found another lawyer to file that opposition in a timely manner; whether plaintiff would have done any better with Ozzello's draft over his lawyer's draft turns on the quality of

outcome of that lawsuit (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241; *Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 357), and here the Nevada state lawsuit was not yet finished at the time plaintiff gave his opening statement. Nor can we look to other sources of possible injury (such as plaintiff's incursion of attorney fees) because plaintiff did not state those as damages. (*Adams*, *supra*, 11 Cal.4th at p. 591; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755.) And the fact that the Nevada state lawsuit was dismissed at some point *after* the trial in this case (as plaintiff states for the first time in his reply brief on appeal) does not retroactively alter the propriety of the trial court's ruling at the time of trial. We therefore affirm on this alternative ground. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960 ["we may affirm on any ground supported by the record regardless of whether the trial court relied upon it"].)

17

the drafts' content, which is a matter within the special knowledge of lawyers. Plaintiff argued that Ozzello's drafting of the complaint and opposition went beyond the scope of the written retainer (because Ozzello promised in the retainer only to conduct legal research), but whether Ozzello's agreement to perform tasks based on an oral agreement constitutes malpractice is a matter within the special knowledge of lawyers. Plaintiff argued that Ozzello failed to tell him, up front, that his Nevada lawsuits were meritless, but whether they *were* meritless under the pertinent law is a matter within the special knowledge of lawyers. For the first time on appeal, plaintiff argues that Ozzello's conduct violated various rules of professional responsibility; aside from being an argument not presented to the trial court, whether Ozzello violated those rules and whether those violations constitute a breach of the duty of care are also all matters within the special knowledge of lawyers.

Plaintiff makes two further arguments. First, he argues that he should not be penalized for failing to set forth all of his evidence in his opening statement because he should have had the rest of the trial to do so. This argument ignores the statutory procedure for nonsuit and, more to the point, ignores that he was, for the reasons explained above, barred from introducing expert testimony at *any* point during the trial. Second, plaintiff argues that Ozzello did not do as he promised because he did not deliver the opposition to the motion for judgment on the pleadings. While it is true that an act of legal malpractice necessarily constitutes a breach of the contract for services (e.g., *Neel, supra*, 6 Cal.3d at p. 181), the fact that a lawyer breaches a contract does not necessarily constitute legal malpractice. Plaintiff's reliance on the latter proposition is accordingly flawed.

18

In light of our analysis, we have no occasion to address plaintiff's further arguments.

\* \* \*

We are mindful that the rulings the trial court made in this case—regarding the continuance, the late designation of an expert, and the nonsuit—may have been different (or obviated entirely) if plaintiff had had the assistance of counsel, and may have allowed plaintiff to present his case to the jury. But this is a case where plaintiff apparently had the wherewithal to hire counsel (as he did for a brief period of time here and as he did in Nevada) but elected not to do so. The law is clear in such situations: We must treat him no differently than a party with counsel. And under that law, the trial court's rulings were correct and within its discretion at the time they were made.

**DISPOSITION**

We affirm the judgment. Ozzello and the firm are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ